Madden, Judge,
dissenting:
As the findings of the court show, the Commissioner of Narcotics knew that narcotics agents worked, on the average, 13 hours a week more than the 40 hours named in the applicable statute. There is no evidence whatever that, in doing so, they did more than was necessary to fulfill the duties of their jobs, or that they could have held their jobs without working as many hours as they did. The case seems to me, therefore, to be on all fours with the cases of Arnvid Anderson, et al., post, p. 365, and Gorman L. Schaible, et al., 135 C. Cls. 890.
I would deny the Government’s motion.
*314 FINDINGS OF FACT
1. The plaintiff is a citizen of the United States and a resident of the State of Ohio. At all times material herein, he was a narcotics agent of the Burean of Narcotics, Treasury Department, and was assigned to District 8, and his post of duty was Toledo, Ohio.
2. The plaintiff by this action seeks to recover from the defendant pay on account of overtime hours worked by him from January 1, 1949, to June 15, 1954. However, the evidence covered an additional 15 days, through June 30,1954, the date of plaintiff’s retirement from Federal service.
3. During the period of the plaintiff’s claim, he was the only narcotics agent regularly and permanently assigned at Toledo, Ohio. The district supervisor at Detroit, Michigan, was the plaintiff’s immediate superior who exercised supervision over the plaintiff’s work from Detroit.
4. The plaintiff’s duties involved: (a) Detection and apprehension of illegal traffickers in narcotics, most of which took place during the night or early morning hours. Such cases developed through complaints and information tendered by private citizens, professional informants, and informants cultivated by plaintiff himself, the Narcotics Bureau, or his district supervisor, (b) Work relating to criminal and technical violations of the Federal narcotics laws by registered producers and possessors of and dealers in narcotics. This work was always done during normal business hours, (c) Public information and education work, consisting chiefly of addresses to civic and parent-teachers groups, concerning the problems of narcotics addiction and illicit narcotics traffic, (d) Cooperation with state and local enforcement agencies on a reciprocal basis, in the matters of illicit narcotics trafficking. This entailed immediate response to calls for assistance, frequently during the night or early morning hours, (e) Administrative routine, usually beginning at 9 a. m. and continuing until completion, sometimes requiring the entire normal business day.
5. At all times material herein, petitioner had a government-owned vehicle in his personal custody, garaged at or near his home without government expense. Such custody *315 was authorized by the Narcotics Bureau after a showing of necessity for immediate transportation at irregular hours had been made by the petitioner.
6. The duties of a Federal narcotics agent are hazardous. The key to effective performance is to be at the locus of the crime at the time it is being committed. The hours of employment of an agent, as recognized by the Narcotics Bureau, from the nature of the duties performed, are determined primarily by the suspect, rather than by the agent. The position of an agent, particularly an agent in charge in a one-man office j is one which requires a great deal of judgment and calls for the exercise of much discretion in determining which leads should be followed and to what extent.
7. Plaintiff, pursuant to Bureau of Narcotics regulations, kept two principal records of the work he performed. The first of these was a report (Treasury Form 101) composed each day, showing in detail what had been done and the amount of time spent doing it. This report was usually composed on the day following the day to which it referred, and was sent by plaintiff to his district supervisor who kept it for a period of years and then, pursuant to statute, destroyed it.
8. The second principal record kept by plaintiff was Treasury Form 58-N, composed each month summarizing the contents of his daily reports. This form made provision for including summaries of information related to the following: cases initiated, developed, aided in developing; cases completed, pending; investigations (including nonregistrant and registrant) ; hours worked in office, outside, in court, in training, traveling; hours required to be worked on the basis of eight hours for each working day; annual leave, sick leave and other leave, and a provision designated “overtime” showing the difference between “required hours” and “total” of hours worked; cooperation with police, other districts, armed services, Federal agencies, addicts and the public. The completed Form 58-N was usually sent to the district supervisor on the first or second day of the month following the month to which it referred. The district supervisor in accordance with normal administrative routine sent the report to the Narcotics Bureau in Washington, D. C., where it remained as a permanent record of plaintiff’s activity.
*316 9. During the period January 1,1949, to June 30,1954, the basic administrative workweek was 40 hours. During this period plaintiff’s records indicate that in the conduct of official duties as a Federal narcotics agent he worked a total of 2,556 hours in addition to those worked by him during the administrative workweek. Of the 2,556 hours, 1,346 hours were spent in travel status.
10. During the plaintiff’s service with the Bureau of Narcotics, he filed no request or claim at any time for overtime compensation with the Bureau.
11. The statute upon which plaintiff bases his claim is the Federal Employees Pay Act of 1945, 5 U. S. C., sec. 911, •which provides in pertinent part:
Officers and employees to whom this subchapter applies shall, in addition to their basic compensation, be compensated for all hours of employment, officially ordered or approved, in excess of forty hours in any administrative workweek, * * *.
12. To implement the above statutory authority, the Civil Service Commission promulgated the following regulation (12 Fed. Beg. 2887, 2888 (1947), 5 CFB, sec. 25.141 (1949 ed.)) which was applicable during the period in question:
OVERTIME WORK AND OVERTIME COMPENSATION
§ 25.141 Overtime compensation authorised, (a) Officers or employees to whom this subpart applies shall be paid overtime compensation, computed as provided in § 25.143, for all hours of employment officially ordered or approved in excess of forty hours in any administrative workweek, including irregular or occasional overtime duty.
(b) In accordance with administrative regulations which may be issued pursuant to § 25.132, any per annum employee may request compensatory time off, in lieu of overtime pay, for irregular or occasional duty in excess of forty hours in any administrative workweek. In case no such regulations are issued, or if under such regulations compensatory time off for such irregular or occasional overtime duty is not specifically requested by the employee it shall be paid for in money when due.
(c) Heads of departments or independent establishments or agencies, including Government-owned or controlled corporations, may delegate to any officer or em *317 ployee authority to order or approve overtime in excess of any that may be included in the regularly scheduled administrative workweek. No such excess overtime shall be ordered or approved except in writing by an officer or employee to whom such authority has been specifically delegated by the head of the department or independent establishment or agency, or Government-owned or controlled corporation.
13. During the times material herein, the Commissioner of Narcotics was authorized to order or approve additional hours of employment in excess of forty hours in any administrative workweek for subordinate employees. Although that official knew that narcotics agents worked, on the average, 13 hours per week over 40 hours without payment or compensatory time off, he did not at any time officially approve or order in writing any agent to work overtime. From the nature of the task, the agents at all times knew that their hours of work were not only irregular but demanding and not always capable of conformance to a regular workaday schedule.
RECOMMENDATION FOR CONCLUSION OF LAW
Pursuant to the authority of Eule 49(c) it is recommended that the plaintiff’s petition be dismissed since the overtime was performed by the plaintiff having the clear knowledge that it had not been ordered or approved in writing by the Commissioner of the Bureau of Narcotics. Tabbutt, et al. v. The United States, 121 C. Cls. 495.